Frank F. Fisk died at Price, Utah, on the 21st day of July, 1934, leaving what purported to be a last will and testament, dated the 4th day of June, 1930. He left surviving him one child, Russell T.Y. Fisk, who was totally disabled following military service in the World War. Deceased's only other relatives were cousins, nieces, nephews, and legal heirs of a deceased cousin who were named as beneficiaries in the will.
The purported will was admitted to probate on August 17, 1934, and Walker Bank Trust Company and a cousin, Lisle A. Smith, were appointed executors. Under the terms of said will, Russell T.Y. Fisk was to receive the residuary estate, with Walker Bank 
Trust Company named as trustee to administer the same.
Russell T.Y. Fisk, only child and heir and residuary devisee and legatee, instituted contest proceedings attacking the validity of said will on the grounds of the testamentary incapacity of testator and the uncertainty and repugnancy of certain of its provisions.
Prior to the hearing on said contest, the beneficiaries under the will on July 11, 1935, entered into what was denominated a "Stipulation, Agreement and Conveyance", hereinafter called stipulation, wherein the parties agreed that the Walker Bank 
Trust Company, named in the will as both executor and as trustee with certain trust duties to perform, should administer the trust estate as trustee under the stipulation. After the stipulation was executed the contest was *Page 290 
heard and upon evidence offered and received the will was set aside on the grounds that the testator was incompetent. The trust set up in the stipulation for the benefit of Russell Fisk was quite different in its terms from that set up by the will.
The question of the good faith of this contest and the resultant stipulation are not brought into question. We assume that the trial court in hearing the contest protected the rights of the testator to will his property in trust limited to certain uses which the will set out even though all the beneficiaries agreed to a trust limited to other uses. On September 21, 1935, the will was set aside; on October 19, 1935, on application of Russell Fisk, the Walker Bank Trust Company was appointed administrator de bonis non. The executors named in the will which had been admitted to probate on August 17, 1934, had carried on administration of the estate up to the time the will was set aside. On this same October 19, 1935, the accounts of the executors were approved and all property was ordered to be turned over to the administrator de bonis non. On November 29, 1935, the administrator de bonis non petitioned for partial distribution and at that time numerous non-liquid assets were turned over to the trustee and certain cash on hand distributed to the beneficiaries according to certain provisions in the stipulation. The administrator de bonis non evidently continued to administer some of the assets for a final decree of distribution of the property from its hands was not signed until September 19, 1936. The administrator de bonis non was not by said order discharged and so far as the record shows is not yet discharged. In order intelligently to follow the opinion, the dates of the decrees must be kept in mind or referred to as needed.
On October 26, 1936, the trustee filed in probate its first account in connection with which it asked for instructions as to specific matters necessary properly to administer the trust because of divergent claims respecting the interpretation of the stipulation. This request for instructions was *Page 291 
joined in by all the beneficiaries. On September 11, 1937, a second report of the trustee with accounts attached for an additional period was filed, again asking for instructions. On June 18, 1938, the court handed down its decree approving the first account and adjudicating the questions submitted in the petition for instructions. This appeal is from that adjudication. This completes the chronology. It should be noted that Walker Bank Trust Co., Trustee, was named as a respondent in this matter, but, in effect, it is neutral. George Fisk, Adam Boyer, Gladys Aldrich, Reba Dangler, Minnie Smurr, and Lisle A. Smith are referred to hereafter in the opinion as respondents and Walker Bank Trust Co. is referred to by name or as trustee.
The stipulation provided in general that certain named legatees of the will, the respondents herein, should be paid each a maximum amount set opposite his name, subject to pro rata deductions for Federal Estate, Federal Gift, and Utah Inheritance Taxes. Russell Fisk, who was also to take his pro rata share, was given the residue. The shares of all were to be paid out of moneys obtained from the liquidation of the estate which consisted of real estate, notes, stocks, bonds and other personal property appraised at $678,213.17. The respondents claim that in addition to the net amount realized from the liquidation of the property represented by the $678213.17 appraisal, the "accumulations" consisting of "interest" on "negotiable instruments and bonds, from rents of real property and sales of negotiable instruments, stocks and bonds over the appraised value of said negotiable instruments and bonds as approved by this court" as may be realized and accumulate in the hands of thetrustee are also chargeable with the payment of the amounts which the respondents are entitled to up to the maximums named in the stipulation. The appellants, Viola E. Goehring, Extrix. of the Estate of Russell Fisk, G.E.M. Pratt, and B.W. Dalton, claim that all the "accretions and accumulations of every kind and nature over and above the appraised value" whether such "accretions or accumulations" occurred during the *Page 292 
administration of the estate by the executors, or by the administrator de bonis non, or occurred after the trust estate was in the hands of the trustee, were to go, by the stipulation, to Russell Fisk and hence to his estate. The respondents contend that the decree of partial distribution of November 29, 1935, and the final decree of distribution of September 19, 1936, distributing cash in the hands of the administrator de bonis non, judicially construed the stipulation and that appellants are now precluded from contending otherwise because such decrees cannot be collaterally attacked. We think it unnecessary, for reasons which will hereafter appear, to determine the correctness of that contention.
It is admitted by respondents that the stipulation gave to Russell Fisk all the accumulations resulting during the administration of the executors of the will and of the administrator de bonis non. The issue arises over the question whether, in addition, it gives him the accruals and accumulations which resulted or may result during the administration of the trust or whether these latter accumulations should merge with the corpus in the hands of the trustee for the purpose of paying, up to the maximum, less the pro rata share of cash for taxes, etc., the sums named in the stipulation as payable to the respondents. Since Russell Fisk, under the stipulation, will receive all of the residue of the trust estate after the respondents' shares are paid, the question will be academic unless the losses from liquidation of all the corpus cut down the latter to such extent that the net sums payable to the respondents cannot be paid out of it. In such case, the accruals under trust administration would serve to augment the corpus so as to insure that all, or a greater share, of the maximum sums which the respondents claim could be paid.
While very cogent arguments have been set forth by both appellants and respondents in support of their contended interpretations of the provisions of the stipulation, we have concluded that the view of respondents is the sounder. And *Page 293 
in order to make our reasons for this conclusion understandable we now take up such parts of the stipulation (consisting of thirty paragraphs) for consideration as occasion requires.
This case being sui generis, not involving any general principles of law, and being interesting only to the parties concerned, we refrain from quoting any more of the stipulation than is necessary for understanding. The two master paragraphs relating to this case are 9 and 13. Paragraph 13 reads:
"The executors and/or administrators of said Estate shall, without unnecessary delay, take such steps as may be necessary or proper for the immediate distribution of said estate to the persons herein named, as follows:
"All lawful claims, expenses, and charges of administration, attorneys fees, Federal Estate Taxes, Federal Gift taxes, and Inheritance taxes of the State of Utah, and the bequest to Carbon County of $75,000.00 in this contract referred to, and the specific property or appraised value of the property mentioned in paragraph four (4) of this agreement, shall be deducted from $678,213.17 (being the appraised value used for computation purposes herein), and the balance remaining shall be distributed to the following named persons in the manner and in the amounts set opposite their respective names.
"The maximum to which each of the following named persons shall be entitled shall be the amount set opposite his name, diminished, however, by the deductions, hereinbefore specified in paragraph three (3) hereof, to be made for Federal estate taxes, Federal Gift taxes, and Inheritance taxes of the State of Utah:
 "George Fisk .......................................... $30,000.00
 Adam Boyer ............................................ 75,000.00
 Gladys Aldrich ........................................ 12,500.00
 Reba Dangler .......................................... 12,500.00
 Minnie Smurr .......................................... 25,000.00
 Lisle A. Smith ........................................ 75,000.00
 Russel T.Y. Fisk, the residue of said amount;

in the proportion that the pro-rata share of each bears to the balance remaining of said amount of $678,213.17, hereinbefore in this paragraph thirteen (13) referred to.
"In addition to the amounts received by Russel T.Y. Fisk from the sum of $678,213.17, as above specified, the said Russell T.Y. Fisk shall have distributed to him all interest and accumulations on said estate *Page 294 
and the savings on said Carbon County Hospital bequest as his sole and separate property, as herein specified."
Several observations before we pass on to paragraph 9: The paragraph mentions only executors and/or administrators, not the trustee. It speaks of the "immediate distribution of said estate". (Italics added.) Paragraph 15 deals with distribution by the trustee. Paragraph 15 states:
"* * * the trustee is to liquidate and reduce to cash the property so distributed to Walker Bank and Trust Company, or so much thereof as can be so converted into cash and from time to time and at such times as the said trustee shall deem best to distribute the proceeds of sales of the said property unto George Fisk, Adam Boyer, Gladys Aldrich, Reba Dangler, Minnie Smurr, Lisle A. Smith and Russell T.Y. Fisk, in proportions computed as hereinbefore set forth until said George Fisk, Adam Boyer, Gladys Aldrich, Reba Dangler, Minnie Smurr and Lisle A. Smith shall have received their maximum legacies as hereinabove provided in paragraph thirteen (13) hereof, all after having first paid and discharged the reasonable costs, expenses and charges of the administration of the said trust including a reasonable compensation for the services of the said trustee."
When the stipulation was drawn and before it was executed by all parties, who lived in different parts of the United States, there had been nearly a year's administration by the executors of the will, much of the property had been turned into cash, and there were large accumulations. Perhaps it was also contemplated that it would be still some time before the estate could be turned over to the trustee. This seems to be so judging from paragraph 9, which we now quote:
"Whereas, in the administration of this estate there have been and in all probability there will be in the future accumulations by reason of interest on negotiable instruments and bonds, from rents on real property and sales of negotiable instruments, stocks and bonds, over the appraised value of said negotiable instruments and bonds as appraised by this court, it is hereby agreed that all accretions and accumulations of every kind and nature over and above the appraised value, as evidenced by the official appraisement of the District Court of the Seventh Judicial District in and for the County of Carbon, *Page 295 
State of Utah, shall be distributed and paid to Russell T.Y. Fisk as his sole and separate estate without any claim on the same by any other party hereto, and said accretion and accumulation shall not be considered a part of the gross or net estate and shall not increase the appraised value of the estate as a basis of computation to fix the rights of the parties hereto."
Appellants contend that the distribution to the trustee was simply a mechanism to permit discharge of the executors and a more leisurely liquidation of the property and, hence, that "administration" contemplated the full administration continuing into the hands of the trustee. Appellants also contend that since an administrator de bonis non was not mentioned in the stipulation it shows that a quick distribution to the trustee was contemplated and that, therefore, the words "in all probability there will be future accumulalations * * *" must have referred to accumulations in the hands of the trustee. There is much force in appellants' contentions but we think they are overridden by still more cogent considerations in favor of respondents' position.
It may be admitted that the trust was only one device in the whole process of administration, especially since the decree of distribution in probate expressly retained jurisdiction of the trust. Moreover, the trusteeship had its initiation in the probate estate and may be considered in the nature 1, 2 of a testamentary trust. Also it is somewhat difficult to explain why the parties to the stipulation would make the accumulations which were to go to Russell Fisk dependent on the length of time and amount of liquidation which might be accomplished before the estate went into the hands of the trustee. But a close examination of certain parts of the stipulation seems to show a very definite scheme to fix the maximum of cash of the shares of the respondents to make them bear their proportion of taxes and expenses and to provide for the satisfaction of these sums pro rata from moneys derived from the liquidation of corpus of the estate while in probate, giving to Russell Fisk the residue of such cash together with the accumulations occurring in *Page 296 
probate, and, after that to make all proceeds in the hands of the trustee, whether from liquidation of corpus or accumulations, a fund for the satisfaction pro rata of the remainder of the shares of respondents up to the maximum, with the residue to Russell Fisk. In fact, not only is the stipulation persuasive of such a plan but the conduct of the parties seems to show that it was so understood. We recite briefly some of the features which lead to this conclusion. First, the use of the words in Paragraph 13 "executors and/or administrators" which seemingly designedly omits the word "trustee". Second, the fact that it must have been contemplated that it would, after the stipulation was signed, take some time to clear up the probate administration which indeed it did because the final distribution to the trustee was not made by the administrator de bonis non until September 19, 1936. Third, paragraph 15 states that the trustee is
"to distribute the proceeds of sales of the said property
[being the property constituting corpus and not providing for deduction of any surplus above appraised value] * * * unto * * * [naming the beneficiaries including Russell Fisk] until said * * * [naming the respondents but omitting Russel Fisk] have received their maximum legacies as hereinabove provided in paragraph thirteen (13) hereof * * *." (Italics added.)
This seems to contemplate resort to all available funds derived by the trustee's liquidation to satisfy the legacies before Russell Fisk obtains the residue. Fourth, that in view of the above phraseology, the word "administration" in paragraph 9 must be held to mean "administration of the estate" in probate. Fifth, this is further borne out by words which show that the parties had in mind accumulations which "have been" in the administration of the estate — a rather large sum of over $45,000. Evidently, it was these accumulations which occupied their attention during the negotiations. Sixth, the stipulation did not mention the trust or its uses until Paragraph 14(a), up to which time it appears to have dealt with the estate in probate, showing the scheme *Page 297 
contemplated. Seventh, the decree of September 19, 1936, gives Russell Fisk all the
"rents unpaid and accumulated to the date of this decree, together with all interest unpaid and accumulated to the date of this decree, from real property, notes and mortgages hereinbefore awarded in trust unto said Walker Bank and Trust Company, provided that said Russell T.Y. Fisk shall be entitled to receive the unpaid and accumulated rents and interest only, if and when the same shall have been collected." (Italics added.)
If Russell Fisk was to obtain the accumulations after the final decree distributing to the trustee, why was it provided that interest and rents earned up to that date but not yetreceived should go to him? If the intention was as appellants contend, the cash whenever it came in would have been his. The decree makes a distinct dividing line. None of the parties seemed to object to such dividing line. If it is not res adjudicata, it is at least strong evidence of acquiescence in the construction of the stipulation respondents contend for.
The decree is affirmed. Respondents to recover costs.
McDONOUGH and PRATT, JJ., concur.
MOFFAT, C.J., and LARSON, J., dissent.